[No. 5441.]
[No. 3103 C. A.]

## STRANG V. OSBORNE ET AL.

1.  Water Rights — Joint-Stock Companies — Articles of Association—Membership.

Although it be admitted that an agreement has the effect of forming a joint-stock association, still, in determining the rights of members to withdraw, such agreement must be considered in order to determine their respective rights and duties.—P. 191.

2.  Same—By-Laws.

Articles of association provided for regular meetings, election of officers, and their duties, that "the by-laws can be amended only by a two-thirds majority of all the stock held"; and such by-laws were duly recorded. Held, that no member or members owning less than two-thirds of the stock could withdraw therefrom while continuing to hold his or their interest in the property which the association was organized to manage, except the association be dissolved by a two-thirds vote, or by a court of equity, as such withdrawal would necessarily work a dissolution of the association, and the abrogation or amendment of the articles, in direct violation of their provisions.—P. 194.

*Error to the District Court of Ouray County.*
*Hon. Theron Stevens, Judge.*

Action by James Strang against James Osborne, Uri Hotchkiss and Daniel Beaton. From a judgment for defendants, plaintiff brings error.

*Affirmed.*

Messrs. STORY & STORY, for plaintiff in error.

Messrs. BELL & CATLIN, for defendants in error.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

Plaintiff in error was plaintiff below.

January 15, 1894, plaintiff and his assignors and defendants or their grantors, were owners as ten-

ants in common of the Pinon Ditch in Water District No. 68, Ouray county.

Plaintiff and his assignors take water from the ditch above the point where plaintiff's division box in situate, and defendants take water from the ditch below such point.

January 14, 1894, all owners of the ditch, being parties to this litigation, except defendant in error Hotchkiss (who is the grantee of Elizabeth Schmid, who on said date was an owner in the ditch), formed what is designated by the answer an "unincorporated stock company," by adopting and executing in writing "by-laws and constitution of the Pinon Ditch Company," which in substance provide for the holding of two regular meetings in each year; for the election of officers, who shall be a president, a secretary and a treasurer, and prescribe their duties; for the advertisement and sale of so much of the stock of members as shall be necessary to pay delinquencies in assessments; the value of the stock is placed at $10.00 per share, each share being entitled to one vote.

Article 12 is: "The by-laws can be amended only by a two-thirds majority of all stock held."

And it is further provided that the president, as soon as practicable in the spring, shall call for bids for the cleaning of the ditch, and when he has let the same shall notify the treasurer, who shall assess the shares and collect the amounts that shall be due therefrom.

This document was recorded in Ouray county.

From January 15, 1894, to April 3, 1903, the affairs of the ditch were conducted in compliance with the by-laws and constitution.

At a meeting of the association held April 3, 1903, at which all owners of the ditch were present, plaintiff and his assignors announced their with-

drawal from the association, and since that date they claim to be no longer connected therewith.

Plaintiff and his assignors own 180.5 shares and defendants own 162.75 shares, the total shares being 343.25, two-thirds of which is 228.83.

During the spring of 1903, it being necessary to clean and repair the ditch, plaintiff notified defendants in writing to assist in cleaning and repairing the ditch from the headgate to plaintiff's division box.

Defendants contributed a portion of the expenses of such work, but refused to contribute their full proportionate share; whereupon, plaintiff for himself and his assignors, who are the owners in the ditch above plaintiff's division box, proceeded under the Act of 1893 (Session Laws 1893, 312; 3 Mills' [Rev.] Stats., 2872a), to enforce a lien for the amount alleged to be due from defendants, on account of the expenses incurred in cleaning and repairing the ditch.

Section 1 of this act is:

"All co-owners of unincorporated irrigating ditches shall pay for the necessary cleaning and repairing of such ditches in the proportion that their respective interests bear to the total expenses incurred in said cleaning and repairing; *Provided,* That any such co-owner may perform labor in cleaning and repairing such ditch, equivalent in value to his or their share of such expenses as aforesaid; *Provided,* No co-owner shall be held liable for cleaning or repairing any ditch below the point from which he takes his portion of the water."

The complaint states a cause of action under the statute.

A joint answer denied the allegations of the complaint and as a defense set up the by-laws and constitution hereinbefore referred to, and alleged that during all the time from January 15, 1894, to April

3, 1903, "the plaintiff and all of said owners always held and contended that under said by-laws and constitution that said manner of cleaning, repair and operation of said ditch could not be changed until done by a vote of two-thirds of said stock or interest in said ditch, and these defendants allege that no such vote or determination has ever taken place."

A reply was filed which put in issue substantially all the new matter alleged in the joint answer.

An amended reply was filed which was as follows: "The plaintiff states that on, to wit, the 15th day of January, 1904 (*sic*), at the time of the formation of said Pinon Ditch Company, the several parties to this suit and their grantors and assignors were the owners of said Pinon Ditch, as tenants in common; that no conveyance of said ditch or any interest therein was ever made to said association, nor was any stock in said association ever issued to any of its members; that said Pinon Ditch Company was formed as a voluntary joint-stock association and was entered into by the plaintiff and his assignors in view of the attributes of a voluntary joint-stock association and the right of any member to withdraw therefrom; that on, to wit, the 3rd day of April, 1903, at a meeting of said association, when all of the members thereof were present, the plaintiff, the said Samuel Kettle, Hannah Smith and Richard Collin, each and all, withdrew from said Pinon Ditch Company by announcing their withdrawal to the other members of the said association, and none of them have been members thereof since said date, nor were they members thereof at the time of doing the work in the complaint alleged."

To this pleading a motion to strike the following words was interposed: "In view of the attributes of a voluntary joint-stock association and the right of any members to withdraw therefrom," because

the same were not issuable facts, insufficient, irrelevant and immaterial, and at the same time, a general demurrer was filed to the amended reply upon the ground, that it did not state facts sufficient to constitute a defense to the new matter set up in the answer.

The motion to strike and the demurrer were sustained.

Plaintiff electing to stand on his pleadings, judgment of dismissal was entered, to which rulings and judgment plaintiff excepted.

It is conceded by plaintiff in error that "if the so-called constitution and by-laws are still binding upon them, irrespective of what may be a proper construction of the last clause as to how the expense shall be divided, the plaintiff in error cannot recover in the action brought by him. The sole question presented is, therefore, whether or not the further replication confessed and avoided the defense alleging the formation of the association; or, in other words, did the plaintiff in error and his assignors terminate their connection with the association by their withdrawal therefrom? If their connection with the association was terminated, the rights of plaintiff in error and his assignors were fixed by the statute above quoted, and they were entitled to collect the sums claimed in this action."

It is contended by plaintiff in error in substance that while the organization which was perfected does not strictly come within the commonly accepted definition of a joint-stock company, in that there was no common capital, the members retaining their interests in severalty, and in that no stock was actually issued; it is evident from the articles of association which were adopted, that the parties intended to form such an association which should have all the attributes of a joint-stock company; and further, that

inasmuch as all the parties admit, by their pleadings, that it was their intention to form a voluntary stock company, the court is relieved of the burden of construing the instrument for the purpose of determining the intention of the parties, and that it is only incumbent upon the court to determine the relations which exist between members of an association of that character.

The first proposition adduced by counsel for plaintiff in error may be admitted, but it does not follow therefrom that it is not the duty of the court to determine the intention of the parties, as made manifest by them in the articles of association which they entered into. They intended to form a joint-stock company beyond doubt, but what the rights and duties of the parties who entered into such association are, must be determined by the articles of association themselves, and in that regard we are not relieved from the duty of construing the articles of agreement as we find them.

Numerous authorities are cited by counsel for plaintiff in error to the effect that voluntary unincorporated stock companies are mere partnerships; that the rights and liabilities incident to the partnership relation attach to the members thereof; that the right of disposition of shares in such association exists in the members; that the transfer of shares does not dissolve the association; that new members may be brought into the association by the transfer of shares; that the withdrawal or disposition of his interest by a member dissolves his connection therewith, but does not dissolve the association; that the distinguishing characteristic between such association and an ordinary commercial partnership in regard to the legal relation existing between the members, is that there is no *delectus personae* in the association, and that a partnership formed for no

specified time is a partnership at will, from which any partner may withdraw at any time.

All of the authorities cited have been examined, and we are not disposed to disagree with the principles announced, as applied to the facts under consideration. But, we do not believe that the principles so announced can be applied to the facts disclosed by this record.

Assuming that it was the intention to form a voluntary joint-stock association, it still remains to determine in what respect, if any, that intention was limited or controlled by the instrument which they entered into, so far as the attributes of such associations are concerned.

Presumably the action of the parties in entering into the association grew out of questions and possibly disputes which had arisen between them, as to the respective rights enjoyed and the liabilities imposed upon them, by virtue of their relation as cotenants in the ownership of the ditch. Manifestly the instrument under consideration was intended to be a settlement of all questions and disputes that had arisen or might arise between the parties, and to provide a method, approved by all, for the management of the ditch, and for contribution by all to the payment of expenses incurred in connection therewith.

On this record, the matter of the proportion of the expense that each member of the association should pay, is not involved.

The articles of association are analogous to the charter of a corporation, or articles of partnership, and all the members of the association are bound thereby. They provide the manner in which they may be amended, and the vote required to adopt such amendment. From the very nature of the subject-matter of the articles of association, the with-

drawal of the owner of one share would necessarily result in the dissolution of the association, and thereby all of the by-laws would be abrogated. It certainly could not have been the intention of the parties to enter into an agreement which could have been rendered futile immediately after it was executed, by the action of the holder of one share. To place such a construction upon the document would be to say that the parties had indulged in an idle ceremony, of no force or effect whatever.

That such was not the intention is made manifest by the fact that the articles were recorded, thereby making a permanent record thereof, which would be notice to all interested, or to become interested, in the subject-matter of the instrument; and by the further fact, that during a period of ten years, all of the parties recognized the validity and binding force of the articles.

It seems clear that it was the intention of the parties to enter into an agreement with each other which should forever fix and determine the rights and liabilities of the owners of the Pinon Ditch, subject to amendment only by a vote of two-thirds of the shares. In this respect the case is distinguished from a commercial partnership, formed for no specific time, which is determinable at will by any partner, and also from a joint-stock company formed under articles which impose no restriction upon the right of a member to withdraw at will.

The conclusion arrived at is, that under the terms of the articles of association no member or number of members owning less than two-thirds of the stock can withdraw therefrom; that such withdrawal would necessarily work a dissolution of the association and the abrogation or amendment of the articles of association, in direct violation of the articles themselves.

This ruling does not interfere with the right of a member to dispose of his interest in the ditch, as his grantee would become a member of the association, and thereby the association would be preserved intact.

Any other construction would be destructive of the agreement itself, of the intention of the parties manifested thereby, and violative of the well settled principle, that the intention of the parties is to be first sought in the instrument under consideration.

· . The association may be dissolved by a vote of two-thirds of the shares, or a court of equity may decree a dissolution for good cause shown.—17 Am. & Eng. Enc. Law 645.

Numerous authorities are cited by counsel for both parties. None of them meet the facts presented by this record, for which reason it is deemed unnecessary to refer to or comment upon them.

The judgment will be affirmed.

*Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE HELM concurring.